COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-199-CV

 

 

PETER C. KERN                                                                   APPELLANT

 

                                                   V.

 

JOE BILL SPENCER, INDIVIDUALLY AND AS                             APPELLEES

PART
OWNER OF NATURE LEISURE TIMES, L.L.C.;

AND
JANICE L. SPENCER, AN INDIVIDUAL;

MARY
SPENCER, AN INDIVIDUAL; BRENT

PENNINGTON,
AN INDIVIDUAL; RUWACH 

RESORTS,
INC.; JLS CONSTRUCTION, 

INC.;
AND NATURE LEISURE TIMES, 

LLC
D/B/A LANTANA LODGE

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.      Introduction








This is an appeal from a Adefault@ no-evidence
summary judgment.  Appellant Peter C.
Kern argues that the trial court erred by failing to grant his motion for new
trial after it granted Appellees= no-evidence motions for summary judgment, to which Kern did not file
responses.  Because Kern failed to
establish that his failure to file summary judgment responses was an accident
or mistake, we affirm.  

II.     Factual
and Procedural Background

A.     The Lawsuit








On August 27, 2004, attorney
Ronald Kurpiers filed suit on behalf of Kern against Appellees Joe Bill
Spencer, Janice L. Spencer, Mary Spencer, and JLS Construction, Inc. (Spencer)
and Appellees Brent Pennington, Individually and d/b/a Favor Investment Co.,
LTD., Favor Investment Co., LTD., and Ruwach Resorts, Inc. (Pennington),
alleging breach of contract, fraudulent misrepresentation, tortious
interference of a business relationship, and civil conspiracy.[2]  Both Pennington and Spencer filed general
denials.  On July 13, 2005, the trial
court held a status conference and instructed the parties to agree to a trial
date.  The parties entered an agreed
scheduling order and discovery control plan that contained a January 15, 2006
discovery deadline and a March 27, 2006 trial date.  On October 27, 2005, Pennington filed an
amended answer and original counterclaim against Kern, claiming unjust
enrichment and money had and received. 
On November 1, 2005, Spencer filed an amended answer and original
counterclaim against Kern, claiming slander of title, tortious interference
with prospective relations, fraudulent misrepresentation, negligence, and
negligent misrepresentation. 

B.     The Summary Judgment       

On February 1, 2006, after
the discovery cut-off, Pennington filed a no-evidence motion for summary
judgment as to each of Kern=s claims.  That same day,
Spencer filed both a no-evidence motion for summary judgment and a traditional
motion for partial summary judgment as to each of Kern=s claims.  The traditional
motion for partial summary judgment was predicated in part on deemed admissions
resulting from Kern=s failure to
respond to Spencer=s request
for admissions.  








The trial court set these
motions for submission without hearing on February 27, 2006.  Kern did not file responses to the
motions.  On February 27, both Pennington
and Spencer submitted proposed orders to the trial court to grant their summary
judgment motions.  Kern did not respond
to the proposed orders.  On March 10,
2006, the trial court signed the orders granting all three summary judgment
motions.  Pennington and Spencer then
filed a joint motion for severance and final judgment pertaining to the claims
on which summary judgment had been granted. 
On March 20, 2006, the trial court ordered that all of Kern=s claims against Pennington and Spencer be severed into a separate
cause number so that the granting of these summary judgment motions would be
final and appealable.  

C.     The Motion for New Trial

On April 7, 2006, Kern
(represented by new counsel) filed a motion for new trial and reconsideration
of Pennington=s and
Spencer=s motions for summary judgment, alleging that Kern=s failure to respond to the motions for summary judgment was not the
result of an intentional failure to respond or conscious indifference, but the
result of accident or mistake.  The
motion included affidavits by Kern and Kurpiers.  Kern=s affidavit contains numerous sections detailing why he believes there
exist genuine issues of material facts concerning each of his causes of
action.  Kurpiers=s affidavit alleges that Kurpiers never received any notices of
hearings or submission dates regarding the summary judgments because they Awere never brought to my attention by my staff.@  Further, Kurpiers=s affidavit states that his failure to respond 








was
not intentional on my part or the result of a cons[cious] indifference, but was
rather a result of my not having received any notices of any hearings or
submission dates on such [m]otions, or it was the result of a mistake or
accident by my office personnel in not bringing the notices to my attention or
placing the hearing or submission dates on my firm=s
calendering system. 

 

Pennington and Spencer filed
responses to Kern=s motion for
new trial.  Spencer claimed that, other
than filing his original petition, Kern Ahas taken no other substantive action to prosecute this case.@  Spencer explained that Kern
had never responded to discovery, refused to appear at his deposition, and
failed to respond to Spencer=s no-evidence motion for summary judgment and traditional motion for
partial summary judgment.  Spencer also
asserted that Kern, through Kurpiers, had received proper notice concerning the
summary judgment motions.  








In support of his assertions
regarding proper notice, Spencer attached to his response the affidavit of
Jason Katz, Spencer=s
attorney.  Katz=s affidavit states that copies of Spencer=s no-evidence motion for summary judgment and traditional motion for
partial summary judgment were sent via certified mail to Kurpiers=s office on February 1, 2006. 
Copies of certified mail Agreen cards@ attached to
Katz=s affidavit show that Kurpiers=s office received copies of their summary judgment motions on February
6, 2006, and that Tanya Ortiz, Kurpiers=s receptionist, signed the green cards.  Katz=s affidavit also states that copies of notices of submission on both
motions for summary judgment and proposed orders concerning these motions were
sent to Kurpiers=s office via
certified mail on February 3, and February 27, 2006.  Copies of certified mail Agreen cards@ attached to
Katz=s affidavit show that Kurpier=s office received copies of these documents on February 6, and March
6, 2006, and that Tanya Ortiz signed the green cards.  Katz further avers that he called and left a
voice message concerning the motions for summary judgment for Kurpiers on
February 1, 2006.  Katz also states in
his affidavit that he sent Kurpiers a facsimile of the notice of hearings on
the motions for summary judgment.  A copy
of the facsimile transmission concerning this notice was attached to Katz=s affidavit, showing that Kurpiers=s office received the facsimile on February 3, 2006.  








Pennington=s response stated that after Kern had filed his petition, Kern had
done Avirtually nothing to prosecute this matter,@ including never having sent discovery or taken depositions.  Like Spencer, Pennington claimed in his
response that Kern, through Kurpiers, had received proper notice concerning the
summary judgment motions.  The affidavits
of Sherry L. ShipmanCPennington=s attorneyCand Sharon
E. MarceauCShipman=s legal assistantCwere attached to Pennington=s response.  Attached to these
affidavits were copies of certified Agreen cards@ showing
that Tanya Ortiz from Kurpiers=s office had signed for and received copies of Pennington=s no-evidence motions for summary judgment on February 6, 2006, and
Pennington=s proposed
orders on March 3, 2006.  

D.     Hearing on the Motion for New Trial

The trial court heard the
motion for new trial on May 22, 2006. 
Kurpiers did not appear at the hearing. 
At the hearing, both Pennington=s and Spencer=s attorneys
testified that Kurpiers had a recurring pattern of failure to prosecute the
case, failure to show up for depositions, and failure to respond to discovery.[3]  








Pennington=s attorney, Shipman, testified that when she sent requests for
disclosure, Kurpiers failed to initially respond and that Aon the eve of a hearing on the motion to compel . . . disclosure,@ Kurpiers finally offered the excuse that he did not receive
notice.  Shipman stated, A[T]hat=s not the
last time that we heard that verse of this song.@  She testified that even though
Kurpiers was notified of Kern=s deposition, Kurpiers did not initially respond, but later said that
he never got the notice of deposition. 
Shipman said that Kurpiers postponed a deposition multiple times and
that, on the day of the deposition, Awe=re all
assembled in Denton in my office, and Mr. Kurpiers called from Florida and says
he can=t be there.@  Shipman further testified that, in addition
to Kurpiers not responding to her notices for discovery and motions for summary
judgment, she consistently had problems getting Aany messages through to him,@ and that Kurpiers did not respond to messages left on voice mail or
with a person at his office.  

Spencer=s attorney, Katz, likewise testified that Kurpiers had failed to show
for a deposition.  Katz said that
Kurpiers did not respond to discovery and that when Katz filed Spencer=s motion to compel, Kurpiers still did not respond.  Further, Katz testified that he had sent
three letters to Kurpiers concerning the motion for summary judgment, the
partial motion for summary judgment, and the notice of hearing.  Katz said Kurpiers did not respond to any of
these letters.  








On May 30, 2006, the trial
court denied the motion for new trial as to Pennington.  On June 6, 2006, the trial court denied the
motion for new trial as to Spencer.  This
appeal ensued.  

III.     Discussion

In two issues, Appellant
argues that the trial court erred by not applying the Craddock[4]
test and thatCgiven the
evidence of this case in light of that testCthe trial court abused its discretion in denying his motion for new
trial.  

A.     Standard of Review

The parties disagree about
what case law guides our review of the trial court=s denial of Kern=s motion for
new trial.  Kern argues that the
three-element Craddock testCas modified for the default summary judgment context by a line of case
including Medina v. Western Waste IndustriesCapplies.  Craddock, 134
Tex. at 392B93, 133 S.W.2d
at 126; Medina v. W. Waste Indus., 959 S.W.2d 328, 330 (Tex. App.CHouston [14th Dist.] 1997, pet. denied).  Spencer argues that the two-element test
articulated in Carpenter v. Cimarron Hydrocarbons Corp. applies.  98 S.W.3d 682, 686 (Tex. 2002).  








Under the Craddock test,
a trial court abuses its discretion by denying a motion for new trial following
a no-answer default judgment if the defaulting party establishes (1) that the
failure to file an answer before judgment was not intentional or the result of
conscious indifference but was due to a mistake or an accident; (2) the motion
for new trial sets up a meritorious defense; and (3) granting a new trial will
occasion no delay or otherwise work an injustice to the plaintiff.  Craddock, 134 Tex. at 392B93, 133 S.W.2d at 126.  In Medina,
the fourteenth court of appeals applied the Craddock test to a motion
for new trial following a no-response summary judgment, but it held that the
second element of the Craddock test should be replaced with the
requirement that the motion for new trial allege facts and contain proof of a
genuine issue of material fact.  Medina,
959 S.W.2d at 330, 331 n.3; see also Washington v. McMillan, 898 S.W.2d
392, 396 (Tex. App.CSan Antonio
1995, no writ); Gonzales v. Surplus Ins. Servs., 863 S.W.2d 96, 102
(Tex. App.CBeaumont
1993, writ denied); Krchnak v. Fulton, 759 S.W.2d 524, 528B29 (Tex. App.CAmarillo
1988, writ denied); Costello v. Johnson, 680 S.W.2d 529, 531 (Tex. App.CDallas 1984, writ ref=d n.r.e.).








In Cimarron, the
supreme court specifically disapproved Medina and held that the Craddock
test does not apply to no-response summary judgment cases in which the summary
judgment nonmovant discovers its failure to file a response before the trial
court renders judgment.  Cimarron,
98 S.W.3d at 686.  But the court also
stated that A[w]e do not
decide today whether Craddock should apply when a nonmovant discovers
its [failure to file a summary judgment response] after the summary-judgment
hearing or rendition of judgment.@  Id.  The court went on to articulate a new
test to determine whether a trial court should grant a summary judgment
nonmovant=s motion for
leave to file a late summary judgment response when the nonmovant discovers its
mistake before the summary judgment hearing:

[A]
motion for leave to file a late summary-judgment response should be granted
when [a litigant] establishes good cause by showing that the failure to timely
respond (1) was not intentional or the result of conscious indifference, but
the result of accident or mistake, and (2) that allowing the late response will
occasion no undue delay or otherwise injure the party seeking summary judgment.

 

Id. at 688.

In this case, Kern argues
that he and Kurpiers had no notice of the summary judgment motions before the
trial court rendered judgment.  Thus,
this case is unlike Cimarron and falls under the question the supreme
court specifically reserved in Cimarron, namely, whether Craddock
applies when a nonmovant discovers its failure to file a response after the
rendition of judgment.  See id.
at 686.[5]








Regardless of whether Craddock
or Cimarron applies to this case, the first element of the two tests is
the same: the summary judgment nonmovant must show that its failure to file a
timely summary judgment response was not intentional or the result of conscious
indifference, but the result of accident or mistake.  Craddock, 134 Tex. at 392, 133 S.W.2d
at 126; see Cimarron, 98 S.W.3d at 688. 
Thus, without deciding whether Craddock, Cimarron, or some
as-yet unarticulated third test applies, we will review the record to determine
whether Kern showed that his failure to file timely summary judgment responses
was not intentional or the result of conscious indifference, but the result of
accident or mistake.

Under both Craddock
and Cimarron, we review the trial court=s ruling for an abuse of discretion. 
Craddock, 134 Tex. at 393, 133 S.W.2d at 126; see Cimarron,
98 S.W.3d at 686.  The test for
abuse of discretion is whether the trial court acted arbitrarily or without
reference to guiding legal principles.  Cire
v. Cummings, 134 S.W.3d 835, 839 (Tex. 2004). A trial court abuses its
discretion if it misinterprets or misapplies the law.  In re E.I. DuPont de Nemours & Co.,
136 S.W.3d 218, 223 (Tex. 2004).

 

 








B.     Conscious Indifference vs. Accident or Mistake  

Conscious indifference is
defined as Athe failure
to take some action that would seem obvious to a reasonable person in the same
circumstance.@  In re A.P.P., 74 S.W.3d 570, 573 (Tex.
App.CCorpus Christi 2002, no pet.). 
This standard requires more than the showing of negligence.  Levine v. Shackelford, Melton &
McKinley, L.L.P., 248 S.W.3d 166, 168 (Tex. 2008).  The controlling factor under this analysis is
Athe absence of an intentional failure to answer.@  Craddock, 134 Tex. at
392, 133 S.W.2d at125; In re A.P.P., 74 S.W.3d at 573.  A party must provide some excuse, but not
necessarily a good excuse, to show that its failure to answer was accidental.  Craddock,134 Tex. at 391B92, 133 S.W.2d at 125.  When a
defaulting party relies on an agent or representative to file responses in a
suit, it must establish that the failure to file responses was not the result
of the party=s or the
agent=s conscious indifference. 
Estate of Pollack v. McMurrey, 858 S.W.2d 388, 391 (Tex. 1993); Lowe
v. Lowe, 971 S.W.2d 720, 723 (Tex. App.CHouston [14th Dist.] 1998, pet. denied). 








Conclusory allegations are
insufficient.  See Cont. Cas. Co. v.
Davilla, 139 S.W.3d 374, 382 (Tex. App.CFort Worth 2004, pet. denied); see also Holt Atherton Indus., Inc.
v. Heine, 835 S.W.2d 80, 82 (Tex. 1992). 
However, uncontroverted factual allegations in the movant=s motion for new trial and accompanying affidavits, if true, negate
intent or conscious indifference.  See
Jackson v. Mares, 802 S.W.2d 48, 50 (Tex. App.CCorpus Christi 1990, writ denied). 
If the nonmovant provides controverting evidence showing conscious
indifference by the movant, then the issue becomes a fact question for the
trial court to determine.  Id.  We review all of the evidence in the record
to determine if the appellant=s allegations are controverted.  Moya v. Lozano, 921 S.W.2d 296, 299 (Tex.
App.CCorpus Christi 1996, no writ).  








The evidence before the trial
court was as follows: (1) Kurpiers=s staff received six different certified mailings[6]Cgiving him notice of the submission date with ample time to file a
response in advance of submission; (2) uncontroverted statements by both
Pennington=s and Spencer=s attorneys describing Kurpiers=s recurring pattern of failure to prosecute the case, failure to show
up for depositions, and failure to respond to discovery; (3) the testimony that
Kurpiers often used the excuse of not having been notified or not having
received notice concerning those events; and (4) Kurpiers=s affidavit, which contains only conclusory statements that he did not
act with conscious indifference and that his failure to receive the notices and
motions was the result of accident or mistake. 


We hold that, based on the
evidence presented to the trial court, the trial court was within its
discretion in finding that Kern=s failure to file any responses to the summary judgment motions was
intentional or the result of conscious indifference and that Kern has failed to
show that the trial court, in denying his motion for new trial, acted
arbitrarily or without reference to any guiding legal principles under either Craddock
or Cimarron.  See Dolgencorp of
Tex., Inc. v. Lerma, 241 S.W.3d 584, 592B93 (Tex. App.CCorpus
Christi 2007, pet. filed) (holding that trial court did not abuse its
discretion in finding that counsel=s failure to appear was intentional or the result of conscious
indifference even though counsel had informed the court of a scheduling
conflict due to a separate trial in another county but did not seek a
continuance or postponement); see also Levine, 248 S.W.3d at 169
(holding that, in a default judgment setting, a pattern of ignoring deadlines
and warnings from opposing party amounts to conscious indifference).  We overrule both of Kern=s issues. 

 








IV. Conclusion

Having overruled both of Kern=s issues, we affirm the trial court=s judgment.    

 

 

ANNE
GARDNER

JUSTICE

 

PANEL B:   DAUPHINOT,
GARDNER, and MCCOY, JJ.

 

DELIVERED: July 24,
2008











[1]See Tex. R. App. P. 47.4.





[2]Kern
also sued individual defendant Arnon C. Boyd, who is not a party to this
appeal.





[3]We
note that the statements made by Kern=s attorney and each of
Appellees=
attorneys were not made under oath. The general rule is that an attorney=s
statements must be under oath to constitute evidence.  Banda v. Garcia, 955 S.W.2d 270, 272
(Tex. 1997).  However, such error is
waived by failure to object when the opponent knew or should have known an
objection was required. Id.; Moore v. Sutherland, 107 S.W.3d 786,
793 (Tex. App.CTexarkana
2003, pet. denied); Knie v. Piskun, 23 S.W.3d 455, 463 (Tex. App.CAmarillo
2000, pet. denied).  The evidentiary
nature of the hearing on motion for new trial in this case was obvious,
particularly given the number of objections to specific statements made by the
attorneys present, and the court=s ruling on these
objections.  The court at one point even
granted a running objection.  Because
none of the parties objected to the lack of oath when each attorney made
statements, we treat their statements as evidence. 





[4]Craddock
v. Sunshine Bus Lines, Inc., 134 Tex. 388, 392B93,
133 S.W.2d 124, 126 (1939).





[5]The
supreme court has not answered this question in any post-Cimarron
decision.





[6]The
trial court properly imputed receipt of these documents to Kurpiers even though
his receptionist signed for them.  An
attorney is deemed to have received notice when the receipt for notice is
signed by the attorney=s
agent or employee.  See, e.g., Elite
Towing, Inc. v. LSI Fin. Group, 985 S.W.2d 635, 643 (Tex. App.CAustin
1999, no pet.) (holding that proper notice of a trial setting was imputed on
appellant=s
attorney when certified notice was received and signed for by another attorney,
who was with another firm in the same building, who had on occasion signed for
mail on behalf of appellant=s attorney).